IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TAMRA J. GIGSTAD,                                        CV. 08-104-MA

               Plaintiff,                        OPINION AND ORDER

     v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

               Defendant.

LINDA S. ZISKIN
P.O. Box 2237
Lake Oswego, OR 97035

     Attorney for Plaintiff

KENT S. ROBINSON
Acting United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

DAVID R. JOHNSON
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

     Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Tamra J. Gigstad seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, this court affirms the decision of the Commissioner.

## PROCEDURAL BACKGROUND AND RELEVANT FACTS

Plaintiff was previously determined to be disabled due to bipolar disorder which met Listing 12.04 in a decision dated May 1, 1997. As part of a Continuing Disability Review by Disability Determination Services (DDS), it was determined plaintiff's condition had improved and that she was no longer disabled as of December 1, 2004. Plaintiff appealed that decision, and a hearing was held before an Administrative Law Judge (ALJ) on April 17, 2007. On July 25, 2007, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review on November 19, 2007. The ALJ's decision therefore became the final decision of the Commissioner for purposes of review.

Plaintiff was 43 years old on December 1, 2004, and has completed high school and two years of college. Plaintiff has past

2 - OPINION AND ORDER

relevant work as an assistant manager fast food worker, clerk/cashier, and dishwasher.  Plaintiff was not represented by counsel at the hearing before the ALJ.

### CESSATION OF DISABILITY ANALYSIS

A claimant has the burden of proving disability.  Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(A).  Social security benefits may be terminated if substantial evidence demonstrates medical improvement, resulting in the claimant's ability to engage in substantial gainful activity. 42 U.S.C. § 423(f);  29 C.F.R. § 404.1594(a).  If the claimant's condition has medically improved and the improvement is related to the claimant's ability to work, the ALJ must then consider whether the claimant's current impairments, including any new impairments, preclude substantial gainful activity.  20 C.F.R. § 404.1594(b)(5).

The Commissioner has established an multi-step sequential evaluation for determining whether a claimant's disability has ceased.[1]  20 C.F.R. §§ 404.1594, 416.994.  At step one, the ALJ

---

[1]Under Title II there are eight steps, and under Title XVI there are seven steps.  A Title XVI analysis does not consider

3 - OPINION AND ORDER

must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If not, the evaluation continues.

At step two, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals a listed impairment. 20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i). If not, the evaluation continues.

At step three, the ALJ must determine whether there has been a medical improvement. 20 C.F.R. §§ 404.1594(f)(3), 416.994(b)(5)(ii). A medical improvement is any decrease in medical severity of the impairment as established by improvement in symptoms, signs and/or laboratory findings. 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(5)(ii). If there is improvement, the analysis continues to step four. If there is no improvement, the process moves to step six.

At step four, the ALJ must determine whether the medical improvement is related to the claimant's ability to work. 20 C.F.R. §§ 404.1594(f)(4), 416.994(b)(5)(iii). If the improvement is not related to the claimant's ability to work, the evaluation proceeds to step five. If the improvement is related to the claimant's ability to work, the evaluation jumps to step six.

---

the performance of substantial gainful activity as a factor in assessing whether the claimant's disability continues. 20 C.F.R. § 416.994(b)(5). For ease of discussion and because step one is not at issue here, I have included all eight steps above.

At step five, the ALJ must determine whether an exception to medical improvement applies.   If an exception applies, the evaluation continues to step six, unless the exception is one involving fraud or non-cooperation, as detailed in 20 C.F.R. §§ 404.1594(e); 416.994(b)(5)(iv).

At step six, the ALJ must determine whether the claimant's current impairment or combination of impairments is severe.   20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v).   If not, benefits cease.

At step seven, the ALJ must determine whether the claimant can perform past relevant work.   20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi).   If so, benefits cease.

At step eight, if the claimant is unable to perform past relevant work, the ALJ must determine whether other work exists that the claimant can perform considering her residual functional capacity, age, education, and past work experience.   20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii).   If so, benefits cease.   If not, benefits continue.

## THE ALJ'S FINDINGS

At step one, the ALJ determined that plaintiff has not engaged in substantial gainful activity.   At step two, the ALJ determined that as of December 1, 2004, plaintiff has not had an impairment or combination of impairments that meets or medically equals a listing.  At step three, the ALJ found that medical improvement had

5 - OPINION AND ORDER

occurred and that the improvement was related to plaintiff's ability to work at step four.

At step six, the ALJ determined that plaintiff continued to have severe impairments, and at step seven that plaintiff was unable to perform her past relevant work. At step eight, the ALJ concluded that as of December 1, 2004, considering plaintiff's age, education, work experience, and residual functional capacity (RFC) based on her current impairments, jobs exist in significant numbers in the national economy that plaintiff can perform. Accordingly, the ALJ concluded that as of December 1, 2004, plaintiff's disability ceased, and that she has not become disabled again since that date. (Tr. 15.)

## ISSUES ON REVIEW

Plaintiff contends the ALJ made several errors: (1) the ALJ failed to ask the vocational expert whether her testimony conflicted with the Dictionary of Occupational Titles; (2) the ALJ's conclusion that plaintiff no longer meets or equals Listing 12.04 was insufficient; and (3) the ALJ did not give plaintiff a meaningful opportunity to be heard, violating her due process rights and failed to develop the record.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.   42 U.S.C.

6 – OPINION AND ORDER

§ 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence means more than a mere scintilla but less

than a preponderance; it is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." <u>Id.</u>  The

court must weigh all the evidence, whether it supports or detracts

from the Commissioner's decision.  <u>Martinez v. Heckler</u>, 807 F.2d

771, 772 (9th Cir. 1986).   The Commissioner's decision must be

upheld,   even   if   the   evidence   is   susceptible   to   more   than

one rational interpretation.  <u>Andrews</u>, 53 F.3d at 1039-40.  If the

evidence supports the Commissioner's conclusion, the Commissioner

must be affirmed; "the court may not substitute its judgment for

that of the Commissioner."  <u>Edlund v. Massanari</u>, 253 F.3d 1152,

1156 (9th Cir. 2001).

**DISCUSSION**

**I.   <u>Vocational Expert's Testimony</u>**.

According to plaintiff, this case must be remanded for further

proceedings because the ALJ failed to ask the vocational expert

(VE) whether her testimony conflicted with the Dictionary of

Occupational Titles (DOT).

Pursuant to Social Security Ruling (SSR) 00-4p, ALJs are

required  to inquire, on the record, as to whether the testimony of

the VE is consistent with the information supplied by the DOT.

And, if there is an "apparent unresolved conflict" between the VE's

testimony and the DOT, the ALJ has an obligation to elicit a

7 - OPINION AND ORDER

reasonable explanation for the conflict before relying on the VE's testimony.  SSR 00-4p.

The Ninth Circuit has determined that SSR 00-4p requires that an ALJ must inquire whether the VE's testimony is consistent with the DOT before the ALJ may rely upon it, and that the ALJ must elicit an explanation if such a conflict exists.  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007).  However, that holding has been qualified, noting that "the failure to make the requisite inquiry is harmless where there is no conflict or where the vocational expert's testimony provides sufficient support to justify any potential conflict."  Chand v. Astrue, 2009 WL 3073927, *14 (E.D. Cal. Sept. 22, 2009)(citing Massachi, 486 F.3d at 1152 n.2).

In this case, it is undisputed that the ALJ did not inquire at the hearing whether the VE's testimony was consistent with the DOT. I therefore conclude that the ALJ failed to comport with SSR 00-4p and the Ninth Circuit's instructions Massachi.[2]   However, I conclude that the error was harmless.

At the hearing, the ALJ asked the VE about plaintiff's past relevant work.  The VE had reviewed plaintiff's past work and discussed that plaintiff had worked as a dishwasher (classified as

---

[2]The hearing before the ALJ occurred on April 17, 2007, and the Ninth Circuit filed its decision in Massachi on May 11, 2007.

medium exertion, unskilled work), clerk/cashier (light exertion, semi-skilled SVP of three), and as a fast food assistant manager who performed the same job duties as a fast food worker (light exertion, unskilled SVP of two).

The ALJ posed a hypothetical to the VE, inquiring whether an individual the age, and with an education and RFC similar to that found by ALJ, could perform that past relevant work.  The VE testified that such a person could not.  The VE did testify, however, that other work existed in the national economy that could be performed by someone with those restrictions.  The VE identified laundry folder (light exertion, unskilled SVP of two), laundry sorter (light, unskilled SVP of two) and patcher (sedentary, unskilled SVP of two).

Plaintiff has failed to identify for this court how the VE's testimony was inconsistent with the DOT.  Broadly reading plaintiff's argument, she contends that the VE failed to explain how changing positions frequently accommodated her desire to not sit or stand for too long.  But plaintiff does not indicate how the positions identified by the VE (laundry folder, laundry sorter, or patcher) conflict with the DOT, or identify any evidence in the record demonstrating that she was unable to perform the duties of those positions at the exertional and skill levels as described. Because plaintiff has not identified a conflict between the VE's testimony and the DOT, and none is apparent from my review of the

9 - OPINION AND ORDER

record, I conclude that the ALJ's failure to inquire in this instance was harmless.

## II.  **Plaintiff Does Not Meet or Equal Listing 12.04.**

Plaintiff contends that the ALJ's conclusion that plaintiff no longer meets or equals Listing 12.04[3] is legally insufficient

---

[3]To prove that her impairment or combination of impairments
meets or equals 12.04, plaintiff is required to demonstrate that
she meets the requirements of (A) and (B), or (c):
     (A) Medically documented persistence, either continuous
     or intermittent, of one of the following:
          (1) depressive syndrome . . .; or
          (2) manic syndrome . . . ; or
          (3) bipolar syndrome with a history of episodic
          periods manifest by the full symptomatic picture
          of both manic and depressive syndromes. . .; AND
     (B) Resulting in at least two of the following:
          (1) Marked restriction of activities of daily
          living; or
          (2) Marked difficulties in maintaining social
          functioning; or
          (3) Marked difficulties in maintaining
          concentration, persistence, or pace; or
          (4) Repeated episodes of decompensation, each of
          extended duration; OR
     (C) Medically documented history of a chronic affective
     disorder of at least 2 years' duration that has caused
     more than a minimal limitation of ability to do basic
     work activities, with symptoms or sign currently
     attenuated by medication or psychosocial support, and
     one of the following:
          (1) Repeated episodes of decompensation, each of
          extended duration; or
          (2) a residual disease process that has resulted
          in such marginal adjustment that even a minimal
          increase in metal demands or change in the
          environment would be predicted to cause the
          individual to decompensate; or
          (3) current history of 1 or more years' inability
          to function outside a highly supportive living
          arrangement, with an indication of continued need
          for such an arrangement.  20 C.F.R. Pt. 404,

because it fails to provide an "element by element analysis" with specific reference to medical records.  Plaintiff also contends that the opinion of her treating Nurse Practitioner Heidi Carlson demonstrates that she equals Listing 12.04 and that the ALJ erred in failing to give that opinion more weight.

At step two of a cessation of disability benefits case (step three in a traditional disability analysis), the ALJ must determine whether the claimant's impairments meet or equal any of the Listed Impairments considered so severe as to automatically constitute disability.  20 C.F.R. §§ 404.1594(c)(3); 404.1520(d).  <u>Tackett v. Apfel</u>, 180 F.3d at 1098.  A claimant bears the burden of proving that he or she meets or equals a listing based on clinical and laboratory diagnostic techniques; a "generalized assertion of functional problems" will not establish disability at this step. <u>Id.</u> at 1100; <u>Burch v. Burnhart</u>, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ is not required to discuss the "combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. <u>Burch</u>, 400 F.3d at 683.  It is plaintiff's burden to offer a theory as to how her impairments combine to equal Listing 12.04.  <u>Id.</u>

_____

Subpt. P, App. 1.

In this case, the ALJ began his nearly five page discussion of plaintiff's impairments by noting that she had previously met Listing 12.04 for bipolar disorder, which was "found by a state agency psychiatrist to create marked difficulties in maintaining social functioning, cause frequent [marked] deficiencies of concentration/persistence/pace, and cause repeated episodes of deterioration." (Tr. 17.) The ALJ then continued to analyze and review plaintiff's medical records relating to her mental health, including a psychological evaluation conducted by D. Rosemarie Reynolds, Ph.D., on June 1, 2004.  The ALJ noted that Dr. Reynolds concluded that plaintiff suffered from recurrent major depression in partial remission, and dependent personality disorder, probably with borderline traits.

The ALJ detailed records from reviewing physician Paul Rethinger, Ph.D., who concluded that plaintiff did not have a severe psychological impairment, and noted that plaintiff's depression was in partial remission.  The ALJ discussed Dr. Rethinger's determination that plaintiff's depression and mood "did not appear to interfere with any of [plaintiff's] functioning" and that plaintiff was no longer in counseling, was actively involved in caring for her autistic son, performed volunteer work, assisted friends, was able to drive, and maintained activities of daily living without limitation. (Tr. 19.)

The ALJ continued with analysis of other reviewing physicians, including Martin Kehrli, M.D., Richard Winslow, M.D., and Dorothy Anderson, M.D., all of which noted plaintiff's depression did not appear to be impairing her ability to function, consistent with medical improvement in her psychological functioning.

The ALJ discussed a neurological evaluation of plaintiff by William Bernstein, Ph.D., M.D., on August 18, 2004, who examined plaintiff for back pain, and concluded plaintiff suffered a lumbar sprain with "modest symptom magnification."  (Tr. 19.)

The ALJ then proceeded to analyze the remainder of plaintiff's voluminous medical records and testimony relating to her physical conditions, including:  carpal tunnel, pharyngitis, laryngitis, deviated septum, diabetes, hip pain, wrist pain, cervical pain, fibromyalgia, migraines, and urinary frequency. (Tr. 20-22.)

After this thorough review, the ALJ concluded that:

> The overall evidence of record demonstrates that due to her psychological impairments, [plaintiff] has had, at most during any 12-month period since December 1, 2004, only mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration/ persistence /pace.  She has not experienced episodes of substantial decompensation. . . .
> Considered individually and in combination, [plaintiff's] current impairments have not met or medically equaled a listing since December 1, 2004.  . . . No treating or examining or reviewing physician/ psychologist has mentioned findings equivalent in severity to the criteria of any listed impairment. Particular consideration is given to listings 1.00 (musculoskeletal system), 11.00 (neurological), and 12.00 (mental disorders) in Appendix 1[.]

13 - OPINION AND ORDER

When determining whether a claimant meets or equals a Listing, it is "unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990).  Thus, contrary to plaintiff's assertion, the ALJ was not required to set out an "element by element" analysis for why plaintiff no longer meets Listing 12.04.  The ALJ's detailed analysis and summary of the medical evidence, which is supported by substantial evidence in the record, amply demonstrates his conclusion that plaintiff no longer meets the B Criteria for listing 12.04.  No more was required.

Plaintiff's contention that the medical evidence from her treating Nurse Practitioner, Heidi Carlson, supports a finding of equivalence misses the mark.  Plaintiff's argument that Carlson's opinion that her diffuse muscle pain is exacerbated by stress, rendering her unable to work falls far short of what is necessary to demonstrate equivalence.  Here, the ALJ discussed that Carlson evaluated for possible fibromyalgia at the suggestion of plaintiff's physical therapist.  The ALJ gave Carlson's assessment of fibromyalgia less weight because the record did not indicate that control points were tested and failed to show that a rheumatologist was consulted or verified Carlson's test results. See 20 C.F.R. §§ 404.1508, 416.908; (meeting a Listing must be shown by signs, symptoms, and laboratory findings); SSR 83-19

14 - OPINION AND ORDER

(requiring the same to establish equivalency).  The ALJ could

appropriately discount Carlson's opinion that plaintiff was "unable

to maintain gainful employment" because plaintiff's disability is

a question reserved to the Commissioner and because Carlson was not

an acceptable medical source.  SSR 06-3p (only acceptable medical

sources may establish the existence of a medically determinable

impairment); Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir.), cert.

denied, 519 U.S. 881 (1996)(a nurse practitioner working on her own

is not an acceptable medical source).  Plaintiff points to no other

medical evidence in the record to establish equivalency, nor do I

find any.  Accordingly, I find no error in the ALJ's treatment of

Carlson's medical records.

The ALJ's conclusion that as of December 1, 2004, plaintiff's

impairment or combination of impairments did not meet or equal a

Listed Impairment is supported by substantial evidence and free of

legal error.  Burch, 400 F.3d  at 680-81; Gonzalez, 914 F.2d at

1201.

**III. <u>Plaintiff Was Provided an Opportunity to Be Heard, and the ALJ
Did Not Have a Duty to Develop the Record</u>.**

Plaintiff appears to be contending that she was denied a fair

hearing because she did not meaningfully waive the right to counsel

and was denied the opportunity to ask meaningful questions of her

lay witness and the vocational expert.  Plaintiff also contends

that the ALJ failed to aid her in eliciting testimony from the lay

witness about her functional limitations. Lastly, plaintiff complains that the ALJ should have developed the record by assisting her in asking the VE a question which included plaintiff's wrist and shoulder limitations.

### A.   Due Process.

Due process requires that a claimant receive meaningful notice and an opportunity to be heard. Udd v. Massanari, 245 F.3d 1096, 1099 (9th Cir. 2001); Hernandez-Devereaux v. Astrue, 614 F.Supp.2d 1125, 1135 (D. Or. 2009).

Plaintiff has failed to demonstrate a procedural due process claim in this instance. Although plaintiff asserts that the ALJ failed to provide her with information concerning her right to be represented by counsel, the record is clear that plaintiff was informed of that right at least twice prior to the hearing. In a December 2004 letter to plaintiff, she was informed of her right to counsel in appealing the cessation of her benefits. (Tr. 63-64.) Among other things, the letter indicated that free legal services may be available and that her local Social Security office had additional information concerning representation. This information was repeated in August 2005, following the hearing officer's decision. (Tr. 38-39.)

Additionally, plaintiff was informed at the hearing concerning her right to counsel. Plaintiff stated that she understood that right, had attempted to secure counsel, and stated that she wanted

16 - OPINION AND ORDER

to proceed on her own, and preferred to call her friend as a witness rather than utilize him as a representative. (Tr. 693.) A review of the transcript reveals that plaintiff participated in the proceedings, and is devoid of any indication that she lacked the ability to understand her choice to proceed without counsel. To be sure, plaintiff has 14 years of education and was described by at least one examining psychologist as having above average intelligence. (Tr. 368-69, 722.) Compare Hernandez-Devereaux, 614 F.Supp.2d at 1135 (finding no colorable due process claim) with Udd, 245 F.3d at 1099 (finding colorable due process claim where the claimant was unrepresented by counsel and lacked mental capacity to understand termination notice and procedures to contest that notice). In short, plaintiff has failed to demonstrate that her due process rights were violated by the ALJ proceeding with the hearing.

Likewise, plaintiff has not demonstrated that she was denied an opportunity to meaningfully participate in the proceedings when asking questions of the lay witness and vocational expert. Plaintiff contends that the ALJ had an obligation to assist her in formulating a questions to the VE and lay witness. However, a review of the record reveals that plaintiff was actively involved in asking questions of the lay witness and the VE. Plaintiff has failed to demonstrate that she was denied the opportunity to prove her claim, or that her mental impairment prevented her from

17 - OPINION AND ORDER

understanding the procedure, therefore, her due process claim
fails.  <u>Hernandz-Devereaux</u>, 614 F.Supp.2d at 1135-36.

**B.   Duty to Develop the Record.**

"An ALJ's duty to develop the record further is triggered when
there is ambiguous evidence or when the record is inadequate to
allow for a proper evaluation of the evidence."  <u>Mayes v.
Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001)(citing <u>Tonapetyan
v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001)).   When a claimant
is unrepresented, the ALJ must be especially diligent in seeking
all the relevant facts.  <u>Tonapetyan</u>, 242 F.3d at 1150; <u>see also</u> <u>Cox
v. Califano</u>, 587 F.2d 988, 991 (9th Cir. 1978).

Plaintiff argues that the ALJ failed to develop the record
because the ALJ failed to ask any questions of plaintiff's lay
witness, Thomas Rogers.  Plaintiff suggests that Mr. Rogers could
have provided additional information about plaintiff's functional
limitations.[4]  However, plaintiff does not specify any additional
functional limitations that Mr. Rogers would have provided, or what
additional functional limitations should have been included in the
RFC which were not.  Moreover, at the hearing, plaintiff concurred

---

[4]Plaintiff also contends that a portion of the transcript
may have not been transcribed because Mr. Roger's testimony
begins in the middle of a sentence.  However, plaintiff does not
identify what additional testimony Mr. Rogers would provide or
was missing from the record.  Thus, plaintiff has not
demonstrated that re-transcription of the hearing testimony is
warranted in this case.

18 - OPINION AND ORDER

that the RFC was an accurate assessment of her capabilities. (Tr. 723.) Notably, plaintiff does not challenge the ALJ's RFC determination. Accordingly, the record before the ALJ was neither ambiguous nor inadequate to allow for an evaluation of the evidence. Mayes, 276 F.3d at 459-60.

Plaintiff's contention that the ALJ should have further developed the record concerning her wrist and shoulder likewise fails. The ALJ's decision details the medical evidence concerning plaintiff's moderately severe right wrist neuropathy in 2002, a successful carpal tunnel release in 2003, and unremarkable wrist X-rays in March 2006. While it is true that the ALJ's duty to develop the record is heightened when the claimant is unrepresented, plaintiff has not identified what, if any, additional functional limitations resulting from her wrist or shoulder the ALJ should have included in the hypothetical. The RFC included lifting restrictions of 10 pounds frequently and 20 pounds occasionally. As noted above, plaintiff agreed that the ALJ's RFC was an accurate assessment of her capabilities at the hearing and she does not challenge the RFC or the ALJ's credibility determination here. Thus, I conclude that the record concerning plaintiff's wrist and shoulder was neither ambiguous nor inadequate.

Plaintiff also suggests that the ALJ posed an incomplete hypothetical to the VE, however, she does not identify what

19 - OPINION AND ORDER

specific limitations should have been included.  The RFC finding
and the hypothetical posed to the vocational expert included those
limitations that the ALJ found to be credible and supported by
substantial evidence in the record.  It was proper for the ALJ to
rely on the VE's answer.  <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217-
18 (9th Cir. 2005).

In summary, the ALJ applied proper legal standards and the
findings are supported by the record and inferences reasonably
drawn therefrom.  Plaintiff's challenges cannot be sustained.  42
U.S.C. § 405(g); <u>Batson v. Comm'r Soc. Sec. Admin.</u>, 359 F.3d 1190,
1193 (9th Cir. 2004); <u>Andrews v. Shalala</u>, 53 F.3d at 1039-40.

## CONCLUSION

Based on the foregoing, the decision of the Commissioner is
AFFIRMED, and this proceeding is DISMISSED.

IT IS SO ORDERED.

DATED this _15_ day of OCTOBER, 2009.

_/S/  Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Judge

20 - OPINION AND ORDER